**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA FRAZIER,<br><br>            Plaintiff,<br><br>v.<br><br>CAPITAL TEAS, INC.,<br><br>            Defendant. | Case No.<br><br><br>Filed Electronically |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Lisa Frazier ("Plaintiff") seeks a permanent injunction requiring a change in Capital Teas, Inc.'s. ("Defendant" or the "Company") corporate polices to cause Defendant's website to become, and remain, accessible. In support thereof, Plaintiff asserts as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendant and assert that its website is not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies related to its web-based technologies so that Defendant's Website (defined herein) will become, and will remain, accessible. The Website at issue is the following: www.capitalteas.com (the "Website").

2. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with

disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

3. Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content. Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access its many pages.

4. Plaintiff has attempted to patronize Defendant's Website in the past, and will attempt again in the future in order to utilize all of the services Defendant offers and to ensure the Website's compliance with the ADA. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website.

5. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities….Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . .

42 U.S.C. § 12188(a)(2).

6. Because Defendant's Website has never been accessible and because Defendant does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

   a) that Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Website so it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

b) that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c) that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d) that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and,

e) that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

8. Plaintiff Frazier's claims asserted herein arose in this judicial district.

9. Defendant purposefully targets and otherwise solicits business from Pennsylvania residents through its Website and store locations. Because of this targeting, it is not unusual for Defendant to conduct business with Pennsylvania residents. In fact, the opposite is true: Defendant derives substantial revenue from transactions in Pennsylvania, having more than a slight effect on the state's commerce as a result.

---

[1] Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

10. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

11. Plaintiff Frazier is and, at all times relevant hereto, has been a resident of Allegheny County, Pennsylvania. Plaintiff Frazier is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

12. Defendant Capital Teas Inc. is a Maryland corporation with its principal place of business located in Annapolis, Maryland. Defendant is an American specialty tea company, which primarily sells premium loose tea and tea-related products. They offer over 200 types of specialty teas with over 23 stores nationwide. Defendant owns, operates and maintains brick and mortar locations across the United States, including a location at the Ross Park Mall, 1000 Ross Park Mall Drive, Pittsburgh, PA 15237. Defendant's brick and mortar locations and Website are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

## FACTUAL BACKGROUND

13. The internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, education, and entertainment for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

14. Individuals with vision related disabilities may access websites by using keyboards in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a blind person may independently use the internet. Unless

websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the sites.

15. Through its Website, consumers can view and purchase products for online sale and home delivery. Defendant's Website also allows consumers to connect with customer service, create an account for future purchases, view best sellers, and find the nearest store location.

16. Plaintiff is permanently blind and uses screen reader software to access the internet and read website content.

17. Plaintiff has visited the Website and has been denied the full use and enjoyment of the facilities, goods, and services available on the Website as a result of access barriers.

18. The Website's barriers have previously denied Plaintiff full and equal access to all of the services Defendant's Website offers, and now deters Plaintiff from attempting to use Defendant's Website in the future.

19. Despite her permanent disability, Plaintiff is ready, able, and intends to visit Defendant's Website once it is made compliant. Plaintiffs' disability, and the challenges Plaintiff faces in physically traveling to and shopping in traditional brick-and-mortar retailers as a result of it, make it particularly likely that Plaintiff will return to Defendant's Website in the future to purchase Defendant's goods from the comfort of her home, or testing it for compliance.

20. As a result of having visited Defendant's Website in the past, and of investigations performed on Plaintiff's behalf, Plaintiff is aware that Defendant's Website includes at least the following access barriers:

    a) A text equivalent for every non-text element is not provided;

    b) Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

c) Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement;

d) If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

e) A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

f) Web pages lack titles that describe their topic or purpose;

g) The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

h) The default human language of each Web page cannot be programmatically determined;

i) Changing the setting of any user interface component may automatically cause a change of context unless the user has been informed before using the component;

j) Labels or instructions are not always provided when content requires user input;

k) In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

l) The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or

notification of changes to these items is not available to user agents, including assistive technology.

21. If the Website were accessible, *i.e.* if Defendant removed these barriers, Plaintiff could independently shop for and research products via Defendant's Website.

22. Though Defendant has centralized policies regarding the maintenance and operation of its Website, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of architectural barriers are permanent in nature and likely to persist.

23. The law requires that Defendant reasonably accommodate Plaintiff's disability by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

24. Removal of these barriers would make Defendant's Website accessible to Plaintiff and to 3.4 million[2] blind Americans, allowing them to independently shop for products via Defendant's Website.

25. Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), and numerous federal courts, all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0

---

[2] "More than 3.4 million (3%) Americans aged 40 years and older are either legally blind (having visual acuity [VA] of 20/200 or worse or a visual field of less than 20 degrees) or are visually impaired (having VA of 20/40 or less) (Eye Diseases Prevalence Research Group, 2004)." Centers for Disease Control and Prevention, "The Burden of Vision Loss." https://www.cdc.gov/visionhealth/basic_information/vision_loss_burden.htm (last accessed 02/24/2017)

AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited February 27, 2017).

26. The Department of Justice utilizes the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). *See, e.g.*, Nondiscrimination on the Basis of Disability, Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460, 43465 (July 26, 2010) (stating that WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility").

27. The Department of Transportation adopted a Final Rule on November 12, 2013 requiring U.S. and foreign air carriers to conform their websites' public-facing pages to the WCAG 2.0 AA standards by December 12, 2016.

28. The Access Board published a Final Rule on January 18, 2017 requiring all websites and electronic content of federal agencies to conform to the WCAG 2.0 AA standards within one year.

29. Without the injunctive relief sought herein, Plaintiff and other individuals with vision related disabilities will continue to be unable to independently use the Website in violation of their rights under the ADA.

**SUBSTANTIVE VIOLATION**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq*.)**

30. The allegations contained in the previous paragraphs are incorporated by reference.

31. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

32. Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

33. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

34. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

35. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or

accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

36. Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulation sets forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

37. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is blind and have disabilities that substantially limit the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), have been denied full and equal access to the Website. Plaintiff has not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

38. Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

39. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action

      that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, blind individuals;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in Paragraph 6 above;

c.      Payment of costs of suit;

d.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

e.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: April 7, 2017

Respectfully Submitted,

*/s/ Benjamin J. Sweet*
Benjamin J. Sweet (PA Bar No. 87338)
bsweet@carlsonlynch.com
Edwin J. Kilpela (PA Bar No. 201595)
ekilpela@carlsonlynch.com
Kevin W. Tucker (PA Bar No. 312144)
ktucker@carlsonlynch.com

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243

*Counsel for Plaintiffs Lisa Frazier*